## BERRY ET AL. *vs.* COOPER AND BOYKIN, EXRS.

1. The amendatory act of 1853–'54 did not intend to subvert the order of pleading, so as to admit a dilatory plea to be filed, after the case had been tried upon its merits and was pending on the appeal.
2. By way of establishing a usage in shipping on a certain river, it is competent for a witness to testify as to what has been his habit and custom in shipping on all the boats on said river, as well as on the particular boat upon which the loss occurred which is the subject-matter of controversy.
3. To make a usage good, it must be known, certain, uniform, reasonable, and not contrary to law ; and if boats on a particular river, or a particular boat on that river, sometimes gave bills of lading containing an exemption from loss by fire, and at other times, bills of lading containing no such exemption, then no such usage is established, for want of uniformity. And even if in a majority of cases, bills of lading contain such clauses of exemption, still the usage is not sufficiently proven as to make it the law of the contract between the parties.
4. Common carriers, cannot by any special contract, exempt themselves from liability from losses arising from negligence.
5. When there is a special exemption as to loss by fire, the onus of showing, not only that the cause of the loss was within the terms of the exception, but also that there was no negligence, lies on the carrier.
6. Where cotton is shipped through an agent for that purpose, he is authorized to bind his principal according to law. In the absence of proof to the contrary, the general law of common carriers, is the

power under which the agent acts. If a usage be sufficiently established, that will govern, because it is presumed to be known to the parties. And this presumption is conclusive upon the principal, whether it is known to the agent or not. But a custom known only to the agent and which is not so established, as to make it the law of the contract otherwise, will not bind the principal. The knowledge of the agent is not the knowledge of the principal in this case· In other words, if he acts upon his private knowledge, he exceeds his authority, and does not bind his principal.

Case, in Muscogee superior court.    Tried before Judge WORRILL, at November Term, 1858.    Motion for new ·trial, decided at May Term, 1859.

This was an action by the executors of Doctor Samuel Boykin, deceased, against Thomas Berry and others, owners of the steam-boat Franklin, to recover the value of one hundred and thirty-four bales of cotton, shipped on said boat and destroyed by fire.

This is the second time this case has been before this court.—See 21 Vol. Geo. Rep. p. ——, where the facts will be found fully stated.    The judgment of the court below was then reversed and the cause remanded for a new trial. Upon the second trial, the jury found for the plaintiffs eight thousand one hundred and seventy-four dollars and eighty-one cents ($8,174 81.)    Whereupon defendants moved for a new trial upon the following grounds, viz:

1. Because the court erred in striking the plea of Alfred Prescott, one of the defendants.

2. Because the court erred in admitting that part of Belisle's testimony, in which he stated that the captain handed him a *bill of lading.*

3. Because the court erred in ruling out the testimony of William H. Harper, offered to show his, Harper's, custom and habit in taking bills of lading, for cotton shipped on all the boats on the river, by which he shipped, containing exceptions from loss by fire.

4. Because the court erred in ruling out the testimony

Berry et al. vs. Cooper and Boykin, Ex'rs.

of W. H. Harper, showing his uniform custom, for several years, in shipping by the Franklin, to take bill of lading containing the exemption of loss by fire.

5. Because the court erred in charging the jury, as requested by plaintiffs' counsel, that if they believed from the evidence, that steam-boats on the Chattahoochee river sometimes gave bills of lading, for cotton, containing the exemption from loss by fire, and at other times bills of lading without such exemption, that then, no usage is established. The court having before charged, that to make a usage good it must be established, known, certain, uniform, reasonable, and not contrary to law.

6. Because the court charged the jury that if they believed from the evidence, that the steam-boat Franklin, sometimes gave bills of lading containing the exemption from loss by fire, and at other times gave bills containing no such exemption, then no usage by said boat is established.

7. Because the court charged the jury that if they believed, from the evidence, that the boats on the Chatahoochee river, in a majority of instances, gave bills of lading containing exemption from loss by fire, yet if they in many instances gave bills of lading containing no such exemption, then no usage is established.

8. Because the court erred in charging the jury, that if, from the evidence, they believed the steamer Franklin, received the cotton as common carriers under a contract by which her owners were exempted from loss by fire, and if the cotton was not delivered, but was burnt on the boat, still the plaintiffs are entitled to recover, unless there was on the part of the defendants no negligence or want of due care, and the onus of proof of this fact lies on the defendants.

9. Because the court erred in refusing to charge, as requested by defendants' counsel, that if the proof showed

that it was the custom of the boats on the Chattahoochee river to give bills of lading exempting them from loss by fire—that the custom was certain, well established, and known to Wm. H. Harper, (plaintiffs' agent in shipping the cotton,) and that the clerk of the boat offered to give Harper such a bill of lading, and Harper waived it, then the jury may infer an agreement of exemption from damage by fire.

10. Because the court erred in refusing to charge, as requested by defendants' counsel, that if the proof shewed that Harper gave the instructions to Creighton, the clerk of the boat, to leave the receipts to shew the number of the bales taken, the jury might presume that the parties did not intend that paper or receipt to contain the contract.

After argument, the court overruled the motion for a new trial, and counsel for defendants excepted, and assign said refusal as error.

W. DOUGHERTY, and B. A. THORNTON, for plaintiffs in error.

JOHNSON & SLOAN, and NISBETS, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

All the grounds of error in this case, are set forth in the motion for a new trial; and for the overruling of which this writ of error is prosecuted.

1. The question made in the first assignment is, whether, under the act of 1853–'54, allowing either party to amend his pleadings at any stage of the case, a plea in abatement can be put in upon the appeal, and after a trial upon the merits?

We are clear that the act was intended to authorize no such practice. It was designed to expedite litigation,

and not to retard it. The legislature never contemplated subverting the whole order of pleading, and such is the construction which this court has heretofore put upon the statute, (Kendrick vs. Whitfield, 20 Ga. Rep. 379–380.)

Dilatory pleas may be amended so long as they have a stage in the proceeding. But after a plea in bar or a plea to the merits, dilatory pleas have no longer a stage in the proceeding; and are no longer amendable. Nor does the case of Robinson vs. Wilson, (19 Ga. Rep. 505,) conflict with this view. True, under the act of 1836, a plea of partial failure of consideration could only have been made at the first term, and we held that under the act of 1853–54, (Pamphlet, p. 48,) it might be put in by way of amendment afterwards. But that was a plea to the merits, and which, but for the act of 1836, had a stage in the proceeding up to the final trial. We held that the act of 1853–4 was a virtual repeal of this provision in the act of 1836. The reason for which I never could comprehend, unless the legislature, supposing that they were permitting the party to avail himself of matter by way of defence, for which before he had to resort to an independent action, he should give the plaintiff notice of it at the earliest opportunity.

For myself, I must say, once for all, that I am weary of hearing the act of 1853–4 continually denounced by the Bar. It is a most salutary act, calculated, as I have already said, not to hinder and delay but to promote and expedite justice; and to aid in its administration. The fault is in the courts in not executing it according to its plain letter and spirit, not only by taxing costs, but by imposing such other terms as would carry out the purpose for which the statute was passed. For instance, suppose the opposite party has a deed to prove by witnesses living at a distance; and he makes known the fact to the court. The court says to the party applying, of course, you may amend—that is your right, but you must,

in order to do so, admit the execution of this deed. I have the right, under the law, to fix the price which you are to pay, for the exercise of your privilege, provided in doing so, I do not make it so onerous as to amount to a denial of the just enjoyment of your privilege. How admirably the proceedings would work out. How much delay and expense.would be saved! And we should hear no more complaints against the carelessness in pleading which the act encourages. I repeat, the fault is not in the law. It is just and good, but in the courts and in counsel, in not claiming a *quid pro quo* for the benefits and indulgence which it confers on the pleader.

2. The second error complained of is, that Belisle was permitted to testify, that the captain of the boat handed to him a bill of lading. It seems that this evidence was introduced without objection at the time; and hence this ground of complaint is abandoned on the argument.

3 & 4. We think the court erred in ruling out the testimony of William H. Harper. It went to establish the custom on the river, which the defendants seek to set up in this case; and under which they claim exemption from losses by fire.

5. We see no error in the fifth assignment upon the charge of the court. The court having stated the rule correctly, that to make a usage good it must be established, known, certain, uniform, reasonable, and not contrary to law—stated that, if the evidence showed, and we think it did, that the steam-boats on the Chattahoochee river, sometimes gave bills of lading for cotton, containing an exemption from loss by fire, and at other times gave bills of lading containing no such exemption, that then the custom was not established for want of uniformity.

Now, we do not hold that a few departures from the usage, especially if they were the result of peculiar circumstances, would be fatal to the existence of the custom. But the testimony will be found to make a stronger case,

we think, than this. It is for the jury, however, to apply the rule to the evidence and regulate their finding accordingly.

6. The doctrine just laid down is applicable to the steam-boat Franklin. If the proof be as contended for by the counsel for the plaintiffs in error, that two departures from the established usage of that boat only are shown; and these two even were fraudulently procured, the attention of the court should have been called to the actual facts of the case, and a special charge requested in reference to the proof.

7. And hence, we think there is no error in the seventh assignment. It requires more than a mere majority of cases to establish a usage. We repeat, there must be uniformity or at least approximation to it.

8. Was this charge right, that if, from the evidence, the jury believed that the steam-boat Franklin, received the cotton as common carriers, under a contract by which the owners were exempted from loss by fire; and if the cotton was not delivered but burnt on the boat, still the plaintiffs were entitled to recover, unless there was on the part of the defendants, no negligence or want of due care; and that the *onus* of proof, of this fact was on the defendants.

As to the correctness of the first part of this charge, there is no controversy. It is conceded on all hands, that notwithstanding the exception in the bill of lading as to loss by fire, still, if the cotton was burnt, either from the wilfulness or negligence of the carrier, that the defendants are liable. But the debatable point is, does the burden of proof, as to the circumstances under which the cotton was burnt, devolve upon the plaintiffs or defendants? We have bestowed much thought on this question, and examined the authorities to the extent of our opportunity, having held up this case for several weeks since it was argued.

In Clark et al. vs. Barnell et al. (12 How. U. S. Rep. 273,) it was held that the burden is upon the plaintiffs to establish the negligence; and that the affirmative lies upon him, when the defendant has brought himself within the exemption contained in the bill of lading.

I would remark that the point under consideration was not very prominent either in the discussion or the decision of the case in which it is enumerated. In a note to Chitty on contracts, (top page 212,) the rule is thus stated: "By proving the delivery of the thing to him, the burden of accounting for it is thrown upon the carrier; and he must either show the safe delivery of the goods or prove that loss occurred by one of the excepted clauses, (citing 3 Munf. Rep. 239; Peck 270; 7 Yerg. 340; 2 Bailey, S. C. 177–421; 4 Strobardt 168–180.) "If the carrier" continues the note, "prove that the injury or loss was occasioned, by what is termed the act of God, *prima facie*, he discharges himself; and the onus of proving that the alleged cause would not have produced the loss or injury without his negligence or defective means is thrown upon the plaintiff, (4 Burney 127; 2 Watts 114; 8 Watts 479; 1 Connecticut 487; 3 Mass. 481; 5th Edition of Smith's Leading Cases, 318.)

In Swindler against Hilliard & Brooks, (2 Richardson's Reports, 296,) this point was most thoroughly and ably argued, both upon principle and upon authority, by Messrs. Hunt, Bailey, Petigrue, Memminger, and others, the leaders of the South Carolina bar; and the court held, and we think perhaps properly, 1st, that common carriers cannot exempt themselves from liability for losses arising from negligence; and, 2dly, that where there is a special acceptance, the onus of showing, not only that the cause of the loss, was within the terms of the exception, but also that there was no negligence, lies on the carrier. It is impossible to read the arguments of counsel for the

plaintiffs in that case, and the opinion of the court, and resist the conclusion at which they arrive.

What shipper, when he demands his cotton at the place of delivery, is satisfied to be told that it was burnt? He wants to know *how* it was burnt; and the carrier is bound to give the explanation, for he and his servants alone can do it. He is only excused if the fire was unavoidable, and he should prove that it was so. It is, I repeat, in his power to show the facts, and it should, for that reason, be made his duty to do so. Shippers are obliged to trust to carriers. In the servants. and employees of the carrier, the shipper will always find reluctant witnesses. Why force the owner of produce to make them his witness and thus endorse their credibility? In Tennessee the employees and servants of railroads are not allowed to be witnesses in behalf of their employers. Why compel plaintiffs to make them their witnesses and bind them by the truth of their testimony? The more negligent they have been in the discharge of their duty, the more difficult it will be to extort the truth from them. Could they be expected to swear that the cargo was burnt by their negligence? To place the *onus* upon the plaintiff would be to deny him all redress.

I admit the general rule, that he who alleges must prove. But it is equally well established, that the burden of proof should be upon him who best knows what the facts are. If it be said that the agents and servants may be resorted to by the shipper, as well as the carrier, we have only to repeat, that their wishes, feelings and interest are all on the side of their employers. Let the carrier then prove the loss and the manner of the loss. Policy, as well as the safety of all concerned, demands the establishment of such a rule.

9. If the evidence established the existence of the custom set up in this case, then the law presumes that Mrs. Boykin and her agent, Col. Harper, knew it; and she

will be bound by it.   She will be bound if knowledge of the usage is brought home to her, whether her agent knew it or not.   But the converse of this, we apprehend, is not true.   If the testimony fails to establish such usage, Mrs. Boykin, the principal, will not be bound by the private or individual knowledge of Col. Harper, her agent. In delegating authority to him, to ship her cotton, she is presumed to act under the general law regulating such contracts, or the usage on the Chattahoochee river, provided such usage be proven.

10. The first part of this request is law, and should have been given, in charge to the jury, accompanied by certain explanations; namely—that the jury were to look at the paper itself, and then to all the other circumstances applicable to this point, and determine accordingly as to the intention of the parties respecting the receipt.

Judgment reversed.