OLIVER H. PERRY & another *vs.* JAMES M. THOMPSON & others.*

In an action against a common carrier for the value of goods lost in his custody, evidence that often, but not invariably, he had given to the plaintiff receipts containing a printed clause limiting his liability for goods transported by him, and that, in this instance, after receiving the goods, he gave to a servant of the plaintiff a receipt therefor, containing such a printed clause; but that over part of this clause in this receipt a stamp was so pasted as to render it unintelligible, and that until after the loss neither the plaintiff nor any of his agents or servants had actual knowledge of such a clause in this or any of the other receipts; is not sufficient to warrant a finding that the plaintiff assented to any limitation of the defendant's liability.

CONTRACT against the proprietors of Harnden's Express for the value of a case of blue cassimeres delivered to them by the plaintiffs at Boston for transportation to the plaintiffs' consignees at New York.

At the trial in the superior court, before *Lord*, J., these facts appeared : The defendants were common carriers of merchandise between Boston and New York, having offices, teams and servants in both cities for the collection and delivery of goods. The plaintiffs, on occasions prior to that in question, had intrusted them with goods for transportation ; and, in some instances, the defendants had given to the plaintiffs' clerks, for such goods, receipts in the printed part of which the defendants were styled " express forwarders," and it was set forth that " It is further agreed, and is part of the consideration of this contract, that

* This, with the following Suffolk cases, was argued at Boston in March 1867.

Harnden's Express are not to be held liable or responsible for the property herein mentioned, for any loss or damage arising from the dangers of railroad, ocean, steam or river navigation, leakage, fire or from any cause whatever, unless specially insured by them and so specified in this receipt, which insurance shall constitute the limit of the liability of Harnden's Express in any event; and, if the value of the property above described is not stated by the shipper, the holder hereof will not demand of Harnden's Express a sum exceeding fifty dollars for the loss or detention of or damage to the property aforesaid." On October 28, 1864, the defendants had left at the plaintiffs' warehouse in Boston, for their use, a book containing printed forms of such receipts, which were filled up and made use of by clerks of the plaintiffs and the defendants in forwarding goods prior to January 9, 1865, but not invariably, other receipts, not containing the provision above quoted, having sometimes been used by them both before and after the leaving of the book; and neither the plaintiffs nor their clerks ever had their attention called in any manner to that provision in any of the receipts nor had any knowledge whatsoever of it, until after the loss occurred which was the subject of this action, " unless in law they were bound to know it by the mode of doing business with the defendants." On January 9, 1865, the plaintiffs, wishing to send four cases of dry goods to New York, gave notice to the defendants, whose messenger came with a wagon to the plaintiffs' warehouse, and took away the cases, one of the plaintiffs' clerks saying that he would go to the defendants' office for a receipt. Soon afterwards this clerk did go there, and made an agreement about the freight, and received from the defendants' clerk a receipt for the four cases, and immediately sent it by mail to the plaintiffs' consignees at New York. This receipt was written on one of the printed forms in which the defendants were styled " express forwarders ; " and was for four cases marked Stone, Bliss, Fay & Allen," who were the plaintiffs' consignees at New York; and contained the printed provision above quoted, but over part of it was pasted an internal revenue stamp in such a manner as to conceal those

words and portions of words which are here printed in brackets : " It is further agreed, and is part of the consi[deration of thi]s contract, that Harnden's Express are not to be held liable or responsible for the property herein mentioned, for any loss or dama[ge arising from t]he dangers of railroad, ocean, steam or river navigation, leakage, fire, or from any cause whatever, unless specially in[sured by t]hem and so specified in this receipt, which insurance shall constitute the limit of the liability of Harnden's Expres[s in any event; an]d if the value of the property above described is not stated by the shipper, the holder hereof will not demand of Harnden's Express a sum e[xceeding fifty d]ollars for the loss or detention of or damage to the property aforesaid." No value of the four cases was expressed on the face of the receipt; nor was any statement of their value made to the defendants; but it was admitted, at the trial, " that the defendants would reasonably know from the character of the articles when they took the cases that they were of greater value than fifty dollars ; " and it was also admitted that one of the cases, containing blue cassimeres, was never delivered at its destination in New York. At the time the plaintiffs' clerk took the receipt his attention was not called in any manner to the printed provision quoted, " nor was anything said about it, nor did he read it, or know of its contents, unless in law he was bound to know it by the course of dealing between the parties ;" and neither of the plaintiffs ever saw the receipt until after the loss, or knew of its contents, or had his attention directed to it in any way. The defendants relied on this printed provision in the receipt to relieve them from liability. The plaintiffs in troduced much testimony with a view to show that the defendants were guilty of such negligence as would, nevertheless, render them liable for the value of the lost goods; but the judge ruled that there was no evidence of negligence which would render the defendants liable to the plaintiffs, if not liable as common carriers, and declined to submit the question to the jury, and it is now immaterial. He then ruled " that the plaintiffs were not bound by the provision relied upon by the defendants, it being agreed that they had no actual knowledge of it;

and, against the defendants' objection, ruled that mere notice which might be inferred from the possession of the receipts would not be sufficient to relieve the defendants from liability as common carriers ; " and reported the case to this court, after a verdict for the plaintiffs for nineteen hundred and thirty-three dollars damages.

*G. A. Somerby,* for the defendants.

*T. K. Lothrop & R. R. Bishop,* for the plaintiffs, were not called upon.

BIGELOW, C. J.    The evidence was wholly insufficient to warrant a finding that the plaintiffs had assented to any limitations of the general liability of the defendants as common carriers.    The settled rule of law in this Commonwealth is, that a notice by a carrier that he does not assume the responsibility which the law attaches to his calling, though brought home to the knowledge of the owner or consignor of goods delivered for transportation, does not operate to relieve the carrier from liability for their loss occasioned by causes other than the act of God or the public enemy.    To have that effect it must also be shown by satisfactory evidence that the notice was assented to by the owner or consignor, and that he delivered his property to the carrier intending to acquiesce in the limitation of liability which the notice contained.    *Judson* v. *Western Railroad Co.* 6 Allen, 486, and cases cited.    We do not mean to be understood as saying that such assent and acquiescence may not be shown by evidence drawn from a long and uniform course of dealing between parties, in connection with other circumstances leading to the inference that a notice of a restricted liability on the part of the carrier was recognized by the other party as constituting the agreement on which the contract of carriage was to be performed.    But such dealing and recognition must be tantamount to a clear assent to the terms of the notice on the part of the owner or consignor, or it will fall short of establishing a limitation on the common law liability of the carrier.

In the case at bar it is expressly found that neither the plaintiffs nor their agents or servants had any actual knowledge of the contents of the notice.    Certainly the jury could not find

that the plaintiffs had given their assent to that of which they had no knowledge. Besides, the course of dealing between the parties had not been uniform. Property had been received and carried by the defendants for the plaintiffs without any notice relating to the liability of the former having been given. Nor is this all. The goods for the value of which the present action is brought were delivered into the custody of the defendants before the alleged notice was received by the plaintiffs, and when it was subsequently sent to them a portion of the notice was so covered up by the revenue stamp affixed to the receipt that it could not be read intelligibly. Under such circumstances, the jury could not have properly found any assent by the plaintiffs to these terms of the notice contained in the receipt.

*Exceptions overruled.*