## MOBILE & OHIO RAILROAD CO. *vs.* JARBOE.

[ACTION AGAINST RAILROAD COMPANY, AS COMMON CARRIER, FOR LOSS OF GOODS
BY NEGLIGENCE.]

1. *Liability of common carrier for negligence.*—In a bill of lading, or receipt for freight, given by a railroad company, an exception in these words, "taken at the owner's risk," only exempts the company from the liability as an insurer which is by law imposed on a common carrier, but does not change the character of the employment; nor does it relieve the company, when sued as a common carrier for the loss of the goods, from the *onus* of bringing itself within the exception, by making out at least a *prima-facie* showing that the loss was not caused by negligence; and proof of the facts, that the contract was made during the late war, that the railroad was at that time frequently used by the military authorities in the transportation of troops and supplies, and that, in consequence of the condition of the country, there was a great want of safety and certainty in the transportation of freights over the road, does not make out such *prima-facie* case.

APPEAL from the City Court of Mobile.
Tried before the Hon. H. CHAMBERLAIN.

THIS action was brought by William C. Jarboe, as surviving partner of the late firm of Jarboe & Miller, to recover two hundred and ninety-five dollars, "as damages, for the failure to deliver certain goods, to-wit, three boxes of tobacco, received by said defendant as a common carrier, to be delivered to said Miller, at Mobile, for a reward; which said defendant failed to do." The action was commenced on the 18th June, 1863; and the trial was had, on issue joined on the plea of not guilty, at the January term, 1867. On the trial, as the bill of exceptions states, the plaintiff read in evidence the bill of lading, or receipt, given by the defendant's agent at Okalona, Mississippi, at which place the goods were received for transportation. This receipt was dated the 10th July, 1862; described the goods as "forty-three boxes tobacco, weight 4,846 lbs.;" contained an exception, or stipulation, in these words: "Taken at

owner's risk;" and on it was endorsed a memorandum, signed by John F. Rawls, who was the defendant's receiving agent at Mobile, dated the 14th July, 1862, which stated that "three packages of the within tobacco did not come to hand." "The plaintiff then introduced said Rawls as a witness, who testified that, at that time, he was in the defendant's employment at Mobile, and had charge of the receipt and delivery of freight arriving by the trains; that the shipment of tobacco had arrived in Mobile at the time of his endorsement on the said receipt—that is to say, forty boxes had arrived, but the others had not reached Mobile; that he did not knw the reason why, and could give no account of the three which were missing, and knew nothing as to them; that he could not remember whether any freight was paid by the plaintiff, but supposed it was paid, from the fact that he delivered the forty boxes; nor could he remember how much freight, if any, was paid by the plaintiff. The plaintiff then proved the value of his tobacco, and there rested his case. Said Rawls stated, on cross-examination, that at the time of this transaction, which was during the war, the country was in the possession of large bodies of Confederate troops, who were passing backwards and forwards; that the defendant's road was frequently used by the military authorities, in carrying troops and supplies, the battle of Shiloh having been fought in April, 1862; that said railroad company had met with heavy losses, by stealage from the freight cars, and by interruption and devastation consequent upon the existence of a state of war, and therefore inserted in their contracts to carry goods or freight the words, 'at the owner's risk;' that the plaintiff was a sutler for the army, and the tobacco was part of his 'sutler's stores.'

"Upon the foregoing evidence, the court instructed the jury, that the duty of a common carrier was to transport goods safely, and he could be excused from doing so only by the act of God, or the public enemy; that the parties might stipulate for terms and conditions, limiting the responsibility of the carrier, and such special agreement would be lawful; that the special agreement, however, in the receipt produced in this case, did not change the posi-

tion of the common carrier, except within the particular exception agreed on; that the exception was not a discharge from all responsibility; that it was the duty of the carrier to bring himself within the terms of the exception; that the carrier must account for the goods, by showing that the loss was by cause of, and within the terms of the exception; that the burden of showing how the loss occurred was on the carrier; that he must show that due care and diligence were used for the safe transportation and delivery of the goods; that, to hold the defendant liable, the burden of proving negligence was not on the plaintiff, but the fact of non-delivery of the goods was sufficient to charge the defendant, as a common carrier, in the absence of proof by the defendant of ordinary care and diligence at least, and as to how the loss occurred, or might have occurred, so as to show that the defendant was within the terms of the exception; and that the defendant would be chargeable as a common carrier, as to all except the matter of the exception.

"The defendant requested the court to instruct the jury— 1st, that the defendant, under the contract given in evidence by the plaintiff, is not chargeable with the duties annexed by law to the obligation of a common carrier; 2d, that the obligation of the defendant, under said contract, would be that of a bailee for hire; 3d, that the defendant, under the contract in writing shown by the plaintiff, was not responsible for the negligence of the employees of the railroad company; 4th, that if the jury believe, from the evidence, that the state of the country, at the time this contract was made, was such as to make it impossible for the railroad company to carry freight safely, and that said company used all reasonable efforts to carry on the business of carrying, then, under the contract in evidence, in the absence of any evidence of negligence, (if they believe none was shown,) the defendant would not be liable, by proof of the mere fact that three boxes did not arrive at the point of destination; 5th, that the defendant is not chargeable, under the contract shown in evidence, unless some negigence, or wrongful act of the defendant, is shown; 6th, that, to charge the defendant under this contract, proof of

negligence must be made by the plaintiff; 7th, that, to charge the defendant under this contract, the burden of proving negligence lies on the plaintiff, and not on the defendant to show care and diligence; 8th, that if the cause of the non-arrival of the goods was uncertain and unknown, and it was uncertain whether there was negligence or not, then, in the absence of any proof of negligence, they should find for the defendant; 9th, that, the defendant being charged as a common carrier, if the jury believe that the goods were shipped on the terms of the written contract, then the complaint is not sustained, and the plaintiff can not recover on the evidence, as the evidence would be variant from the complaint; 10th, that the question of negligence by employees of the railroad company, under the contract, does not arise under the complaint, but only of negligence (if any) of the corporation itself."

"The court refused each of the charges asked; and to each refusal, as well as to the affirmative charge given by the court, the defendant excepted."

The charge given, and the refusal of the several charges asked, are now assigned as error.

P. HAMILTON, for the appellant.

W. C. EASTON, contra.

JUDGE, J.—The exception inserted in the contract for the transportation of the freight, in the present case, viz., "taken at the owner's risk," did not change the character of the employment. Appellant remained, notwithstanding the reception of the goods under the contract, a common carrier, with his liability, as such, diminished only to the extent of the exception.—Steele v. Burgess & Townsend, 37 Ala. 253–4, and cases there cited.

A common carrier may legally contract for exemption from that responsibility imposed by the common law, by which he becomes an insurer. But, on grounds of public policy, he can not go farther than this, in the limitation of his liability by special contract.—Mobile & Ohio R. R. Co. v. Hopkins, decided at the present term.

The construction of the contract in the present case,

therefore, must be, that the goods received were " taken at the owner's risk," in so far as the liability of appellant as an *insurer* was concerned.

A portion of the goods not having been delivered at the place of destination, the loss was not brought within the exception therein contained, unless it appeared to have occurred without negligence on the part of appellant. The rule, as we have settled it in such case, is, that inasmuch as " it is for the carrier to bring himself within the exception, he must make at least a *prima-facie* showing that the injury was not caused by his neglect."—*Steele v. Burgess & Town-send*, 37 Ala. 253, and authorities there cited.

This appellant failed to do. That the transaction occurred during the war, and appellant's road about the time was frequently used by the military authorities in the transportation of Confederate troops and supplies, and that in consequence of the condition of the country, there was a great want of safety and certainty in the transportation of freights over the road, furnished good reasons for the insertion of the exception contained in the contract, but did not relieve appellant from that care and diligence, which, notwithstanding the exception, were elements of the contract, nor from the *onus* of making at least a *prima-facie* showing that the loss was not caused by its neglect. It did not even appear on the trial, that the missing boxes were ever started for their place of destination, after having been received by appellant.

The evidence that appellee was " a sutler for the army, and that the lost tobacco was a part of his sutler's stores," is no evidence that "*his* sutler's stores" belonged to the Confederate States Government; nor can any such conclusion be legitimately drawn from this evidence.

It results from what we have said, that there was no error in the charge given by the court, nor in either refusal of the court to charge as requested; and the judgment is consequently affirmed.