# SUPREME COURT OF TEXAS.

## TYLER TERM, 1885.

65 13
79 28

65 13
83 65
84 133
84 153

65 13
90 159
92 593

## W. A. RYAN & CO. v. M., K. & T. R'y CO.

### (Case No. 1788)

1. AGENT—TRANSPORTATION.— As a general rule, the consignor, as the agent to whom the owner intrusts his goods to be delivered to the carrier, must be regarded as having authority to stipulate for the terms of transportation. (Red. on Car., sec. 52; Hutch. on Car., sec. 265.)

2. SAME.— The carrier is authorized to act upon this presumption in contracting with the agent, and need not inquire into his authority to make a particular shipment. (Authorities cited.)

3. CONTRACT—PLACE—VALIDITY.— It is admitted in law that when a contract is to be wholly performed within a state, the laws of that state must furnish the rule as to its validity.

4. SAME.—When the contract is to be partly performed in the state where it is made and partly in another, the presumed intention of the parties, gathered from circumstances surrounding the transaction, must govern.

5. SAME.—When there are no circumstances attending the transaction, except the mere execution, delivery and acceptance of a bill of lading, the safest rule to arrive at the intention of the parties is that which upholds, rather than that which defeats, the contract, and the laws of the state under which the contract is valid should be applied. (Eng. and Am. cases cited.)

6. SAME—BILL OF LADING.— It will not be presumed that the parties to a bill of lading intended to have their contract governed by different laws according as a loss might occur in one or in another state, unless circumstances were proved showing such an intention.

7. BILL OF LADING—CONDITIONS.— In America it is generally held that a mere notice displayed in the office of a railway company, or printed on the bill of lading, will not bind the owner, though brought to his knowledge.

8. SAME.— But his assent is conclusively presumed to conditions inserted in the body of the bill of lading, when he has had an opportunity to know its contents, has received it at the time of shipment, and the carrier has used no unfair means to deceive. If the conditions are in small type, they are not void for that reason alone. (Authorities cited.)

9. CARRIER—NEGLIGENCE—BURDEN OF PROOF.— Under an ordinary bill of lading, with no special exceptions, if the goods are lost by the act of God, the burden is upon the carrier to prove that his negligence did not contribute to cause the loss. (Story on Bail., sec. 529, etc.)

10. SAME.— So when goods are lost by some agency excepted by the carrier in the bill of lading, the plaintiff has merely to aver and prove that they were delivered to the

carrier and were not received at the point of destination. This makes a *prima facie* case of negligence.

11. SAME.— To avoid liability, the carrier must show that the loss was caused by one of the excepted agencies, and must also rebut the presumption of negligence. This is in accordance with the rules of evidence and with the important rule that the burden of proof is on him who best knows the facts. (Authorities cited.)

APPEAL from Grayson.   Tried below before the Hon. R. R. Gaines.

This suit was instituted in the District Court of Grayson county to recover from the defendant the value of certain goods, wares and merchandise which defendant, in St. Louis, Mo., agreed and contracted to deliver in Honey Grove, Tex., and which were not delivered.   The bill of lading had a printed head, in which was stipulated certain exceptions from liability, among others, that of destruction by fire.   The goods were shipped by A. F. Shapleigh & Co., from whom they had been purchased by plaintiff, and were destroyed by fire while in defendant's possession.   The cause was submitted to the court and decided in favor of defendant.

*Bledsoe & Head*, for appellants, on construction of contracts, cited: Story, Conflict of Laws, sec. 280; Frazier *v.* Warfield, 9 Sm. & Mar. Miss. Rep., 220.

On notice to the shipper, they cited: 2 vol. Red. Law of Railways, p. 84, sec. 4; New Jersey Steam Nav. Co. *v.* Merchants' Bank, 6 Howard's U. S. Rep., 344.

On burden of proof, they cited: Greenl. Ev., vol. 2, sec. 219; Graham & Co. *v.* Davis & Co., 4 Ohio St., 362.

*Foster & Wilkinson*, for appellee, on authority of agents, cited: Lawson on Cont. of Car., secs. 223, 224, 225, and authorities cited; Christenson *v.* Am. Ex. Co., 15 Minn., 270; s. c., 2 Am. Rep., 122; Shelton *v.* Mer. Disp. Co., 59 N. Y., 258; 45 Iowa, 470; 24 How. Pr.; 290; 12 Me., 422; 55 Me., 462; s. c., 4 Am. Rep., 234; 57 N. Y., 1; 6 How., 344; Hutch. on Car., sec. 265.

On the acceptance of the bill of lading, they cited:   Bank of Kentucky *v.* Adams Ex. Co., 93 U. S., 174, 175, 188, and authorities cited; Grace *v.* Adams Ex. Co., 100 Mass., 505; Kirkland *v.* Dinsmore, 62 N. Y., 161; s. c., 20 Am. Rep., 175; Hoadley *v.* Northern Trans. Co., 115 Mass., 304; s. c., 15 Am. Rep., 107; Morrison *v.* Phillips & Colby Const. Co., 44 Wis., 405; s. c., 28 Am. Rep., 599; Mulligan *v.* Ill. Cent. R. R. Co., 36 Ia., 181; s. c., 14 Am. Rep., 514; McMillan *v.* M. S. & N. I. R. R., 16 Mich., 80; Snider *v.* Adams Ex. Co., 63 Mo., 376; s. c., 4 Cent. Law Jour., 179; Lawson on Cont. of

Carriers, sec. 102 and cases cited; McMillan v. M. S. & N. I. R. R. Co., 16 Mich., 79.

On burden of proof they cited: Lawson on Cont. of Car., sec. 248 and note 12, and cases cited; Wharton on Neg., sec. 422; Schouler on Bail., p. 479; Abbott's Trial Ev., p. 569 and notes 9, 10, 11; Whitworth et al. v. Erie R'y Co., N. Y., 1882; s. c., 6 Am. and Eng. R. R. Cases, 349; Clark v. Barnwell, 12 How., 272; Trans. Co. v. Downer, 11 Wall., 129; Farnham v. Camden and Amboy R. R. Co., 55 Pa. St., 53; Cochran v. Dinsmore, 49 N. Y., 249; Caldwell v. N. J. St. Co., 47 N. Y., 282; Kallman v. U. S. Ex. Co., 3 Kan., 210; N. J. St. Nav. Co. v. Merchants' Bank, 6 How. U. S., 344.

On *locus contractus*, they cited: Lawson on Cont. of Car., sec. 211; First National Bank v. Shaw, 61 N. Y., 283; Robinson v. Mer. Disp. Trans. Co., 45 Ia., 470; Rorer on Interstate Law, 59; Hale v. N. J. St. Nav. Co., 15 Conn., 539; s. c., 39 Am. Dec., 401-2; 20 Am. Dec., 279; 20 Id., 286; Penn. Co. v. Fairchild, 69 Ill., 263; Talbot r. Mer. Disp. Trans. Co., 41 Ia., 247; McDaniel v. Chicago R. R. Co., 24 Ia., 412; Morgan v. N. O., M. & T. R. R. Co., 2 Wood's C. C., 253; Mo. Pac. R'y Co. v. Harris, Tex. Law Rep., vol. 1, No. 2, p. 75.

WILLIE, CHIEF JUSTICE. — As a general rule, the consignor, as the agent to whom the owner entrusts his goods to be delivered to the carrier, must be regarded as having authority to stipulate for the terms of transportation. Red. on Car., sec. 52.

Having the power to make the delivery, he is to be presumed to have all the power necessary to carry it into effect. Hutch. on Car., sec. 265.

The carrier is authorized to act upon this presumption in contracting with the agent, and need not inquire into his authority to make the particular shipment.

These principles are so thoroughly settled by the decisions of the courts that it is unnecessary to inquire into the reasons upon which they are founded. Nelson v. R. R. Co., 48 N. Y., 498; Squire v. R. R. Co., 98 Mass., 239; York Co. v. Central R. R. Co., 3 Wall, 107; Moriarity v. Harnden's Express, 1 Daly, 227; Meyer v. Harnden's Express, 24 How. Pr., 290.

We think, therefore, that the court did not err in holding that Carney, Stern & Co. were authorized to accept for the appellants the bill of lading upon which this suit is founded.

The question then arises, did the acceptance of the bill of lading constitute a contract valid in law?

Whether the statute of Texas prohibiting common carriers from

limiting their common law liability applies to railroad companies whose lines do not lie wholly within this state, and whether, if it does, the statute is in violation of the Constitution of the United States, are points not necessary to be considered in the determination of this question.

It was, in effect, admitted upon the trial that common carriers could, by the law of Missouri, where the present contract was made, place such restrictions upon their common law liability as are contained in the bill of lading upon which this suit is based. The law of our state, in which the contract was in part to be performed, forbidding such restrictions, it is of vital importance to ascertain whether the validity of the contract is to be governed by the law of Texas or that of Missouri.

It is admitted law that when a contract is to be wholly performed within a state, the laws of that state must furnish the rule as to its validity. The parties have their attention drawn to the law of the state in which alone the contract can be broken and liability incurred, and it must be presumed that they intended that their rights and obligations should be determined by the laws prescribed by that state upon the subject. But when the contract is not to be wholly performed in any particular state, but partly performed in the state where it is made and partly in another, or several others, there is difficulty in laying down any rule which can be rested upon principles entirely satisfactory. Hence, there is some diversity of opinion among courts and law writers upon the subject. The foundation principle seems to be that the presumed intention of the parties must govern. If, from all the circumstances surrounding the contract, it is reasonable to suppose that they had in view, at the time, the law of the place of the contract, that must prevail; if the law of the destination of the goods in reference to the carriage of which the agreement, then that law must govern. When there are no circumstances attending the transaction, except the mere execution, delivery and acceptance of the bill of lading, the safest rule by which to arrive at the intention of the parties is that which upholds the contract rather than that which defeats it. Parties to a contract are presumed to intend that it shall be enforced. It is not to be presumed that they deliberately executed an agreement, knowing that it was invalid. The carrier in this case must have intended to secure to itself some real protection from responsibility in the cases excepted in the bill of lading, and the appellee that he should have this protection. By the laws of Missouri it was afforded; by the laws of Texas it was not. To give validity to the contract, and thus carry

out the intentions of the parties, we must apply to it the laws of the former state, and, it is our opinion that by these laws its validity must be determined. This principle is applied frequently to cases where a contract is made in one state for the payment of money in another. Although the contract is to be wholly performed in another state, where the rate of interest agreed upon is usurious, yet, if by the *lex loci contractus* it is lawful the interest may be recovered. Whar. Conf. of Laws, sec. 504, and authorities cited in note; Ib., sec. 429; Whar. on Ev., sec. 1250; 2 Kent, 460; 2 Pars. on Cont. 95; and the authorities cited by these writers.

This rule also obtains when there is a conflict of laws as to the capacity of the parties to the contract. Whar. on Conf. of Laws, secs. 101-104, 112-115.

Our views upon this subject are fully sustained by a large majority of the decisions made in England and America. McDaniel *v.* Chicago R'y Co., 24 Iowa, 412; Talbot *v.* Merchants Despatch Co., 41 Iowa, 247; Pennsylvania Co. *v.* Fairchild, 69 Ill., 260; Hale *v.* Warlo, 15 Conn., 539; 1st Nat. Bank *v.* Shaw, 61 N. Y., 283; Cantu *v.* Bennett, 39 Tex., 304; Peninsular R. R. Co. *v.* Shaw, 3 Moo. P. C., 290; Robinson *v.* Merchants Despatch Co., 45 Iowa, 470.

In Brown *v.* Camden and Atlantic R'y Co., 83 Pa. St., 316, the law of the state of performance (New Jersey) was held to govern, because there the railroad company was chartered and had its office, and the whole performance of the contract was to take place in that state, as the Delaware river was no more a portion of Pennsylvania than it was of New Jersey.

The rule we have announced renders it unimportant that the place where the loss occurred was not in the state where the contract was made. See Dike *v.* Erie Road, 45 N. Y., 113.

It is not to be presumed that the parties intended to divide up their contract so as to have it governed by different laws accordingly as a loss might occur in one or in another state, unless circumstances were proved showing such an intention.

It is objected that a special contract limiting the appellees liability was not evidenced by the mere receipt of a bill of lading signed by an agent of the railroad company; but it is said, that to have that character, an agreement should have been signed on the part of the owner of the goods. The generally recognized rule is to the contrary, both in England and America. In the latter, it is generally held that a mere notice displayed in the office of the company, or printed on the bill of lading, will not bind the owner, though brought to his knowledge; but his assent is conclu-

sively presumed to the conditions inserted in the body of the bill of lading when he has had an opportunity to know its contents, and the carrier has resorted to no unfair means of deception, and it has been received at the time of shipping the goods. Hadley *v.* Northern Trans. Co., 115 Mass., 304; Grace *v.* Adams, 100 Mass., 505; Maghee *v.* C. & A. R. R. Co., 45 N. Y., 514, 518; Hutch. on Car., secs. 239, 240, 246; Lawson on Cont. of Car., sec. 102, and cases cited.

The fact, too, that the conditions are printed in small type is of not such importance as to render them void for that reason alone. It would have this effect only when from fraud, or undue advantage on the part of the carrier, or other circumstances, the shipper was prevented from acquainting himself with the conditions. Blossom *v.* Dodd, 43 N. Y., 264; Camden and Amboy R. R. Co. *v.* Baldauf, 16 Pa. St., 67; Perry *v.* Thompson, 98 Mass., 249.

This action was brought against the railroad company for the value of the goods upon an allegation that they were not delivered at their destination, but were converted to the use of the company. The answer was that the goods were destroyed by fire without any negligence on the part of the appellee. The proof was that they were burned at night, in the company's possession, and in its cars and at its depot, before the transit was completed. The question is, the railroad company being liable if the goods were destroyed by fire through its negligence, was it necessary for the appellants to make on their part any proof upon this subject, or did it devolve upon the company to show that the fire did not occur through its negligence or want of proper care?

This question as to the burden of proof, when a carrier is sought to be made liable for the non-delivery of goods under a special contract like the present, has elicited a contrariety of opinion from the courts of the American Union. Law writers have also been somewhat divided in announcing the principle to be derived from these decisions.

It has never been passed upon by this court, and we feel authorized to adopt that view which seems to be the best supported by principle, regardless of the preponderance of authority upon the subject.

It is said that the rule requiring the plaintiff, after the carrier has shown that the goods were destroyed by fire or other excepted cause, to prove that it occurred through the negligence of the carrier, rests upon the principle that he who avers negligence must prove it. Under an ordinary bill of lading, with no special exceptions, if the goods are lost by the act of God, such as a peril of the sea, the burden is upon the carrier to show that his negligence did not contribute

to bring about the accident.   Story on Bail., sec. 529; Shaw v. Gard-
ner, 12 Gray, 488; Humphreys v. Reed, 6 Whar., 435.

Yet, the plaintiff asserts negligence in the one case no more than in
the other.   A carrier by water is as much bound to protect his cargo
from fire, though that be within the exceptions of his contract, as he
is to construct and manage his vessel and stow his cargo so as to
avoid, as much as possible, the dangers of the seas.   We cannot see
then why he should not account for the manner of the loss, and the
causes which brought it about as much in the one case as in the other.

In a suit of this character, it is sufficient for the plaintiff to aver
and prove that the goods were delivered to the carrier, and that they
have not been received at their point of destination.   This is said to
make a *prima facie* case of negligence, which the carrier must rebut
or the plaintiff will recover.   He may rebut it only in one way, and
that is by showing that the goods were lost by one of the exceptions
known to the common law, or one of the special exceptions reserved
in his contract with the shipper.   If, by neither a common law excep-
tion, or one specially reserved, he is exonerated, he must show that
the loss happened without negligence on his part.   Take, for instance,
the exception of loss by fire.   The contract recites merely that if the
loss occurs by fire the carrier should not be liable, but the law incor-
porates the written words "without negligence on the part of the
carrier."   What the law inserts is as much a part of the contract as
what is expressly written in it.   When, therefore, the plaintiff makes
out a *prima facie* case of negligence, by proving that the goods were
not delivered, is this case rebutted by proof that they were not deliv-
ered by reason of a fact which may have existed, and the carrier still
have been negligent?   If so, he can stop with the presumption of neg-
ligence arising from non-delivery still resting upon him, and call
upon his adversary to further strengthen his own *prima facie* case, or
it shall lose this character altogether.   This would be against all the
rules of evidence.

There is another important rule which furnishes additional reasons
why the burden of proof to show diligence should be upon the car-
rier, which is that the burden of proof is on him who best knows the
facts.   Baker v. Brinson, 9 Rich. S. C., 201; Berry v. Cooper, 28 Ga.,
543; 1 Greenl. Ev., 79.   Here the fire occurred at night, whilst the
goods were in transit, and in care of the appellant's employes.   Who
was most likely to know the facts which brought about the fire, or
prevented the goods from being saved from the flames, the plaintiff,
who was absent, or the employes of the company, who were present?
These latter alone could tell whether improper storage, defective

machinery, or negligent use of lights, or other similar cause set the goods on fire. Whilst they would have been competent witnesses for the plaintiff, they were not under their control, but under command of the defendant, and it is the party presumed to know where these employes are to be found. If the rule is that the company must furnish evidence of the circumstances attending the fire so as to clear itself of the charge of negligence, it can and will be produced whenever their testimony is favorable. If it is to the contrary, the witnesses may not be forthcoming. It is a salutary rule which presumes the existence of a fact against a party who has the means of disproving it in his power and fails to make use of them. And, for this reason, it is safest to presume that a carrier is negligent who refuses to show to the contrary, when, if such is the fact, he has but to call his own agents to the witness stand. His employes are with the goods during the whole time they are under his charge, by day and by night. They are with them at all places, whether at depots or when the train is at its greatest speed, or the ship is in mid-ocean. The owner is presumptively absent. It would be a harsh requirement to compel the distant owner to have detailed to the jury what occurred on a ship at and about the time of the accident at midnight, a thousand miles from shore, when none were present except the crew of the ship, and they interested against him, and not subject to his control, and to relieve the owner of the ship from making any proof whatever upon the subject. These views lead us to the conclusion that it was incumbent on the appellant to prove what the contract under the law provided should exempt him from liability, and what he had pleaded in his answer, viz., that the fire occurred without negligence on his part. Not having done so, judgment should have gone for the appellants.

We are aware that a majority of English and American decisions are against this view, and text writers have generally laid down the doctrine in accordance with the most numerous decisions. Mr. Greenleaf, however, in his work on evidence, vol. II, sec. 219, states the law to be that "even if the acceptance of the goods is special, the burden of proof is still on the carrier to show not only that the cause of the loss was within the terms of the exceptions, but, also, that there was on his part no negligence or want of due care." This view is also supported by the following high authorities—to the able opinions delivered in these cases we refer as containing arguments which we need not repeat, but which, in our opinion, are unanswerable: Berry v. Cooper, 28 Ga., 543; Davidson v. Graham, 2 Ohio St., 131; Graham v. Davis, 4 Ohio St., 362; Erie R. Co. v. Lockwood, 28 Ohio St., 358; Gaines v. U. T. Co., 28 Ohio St., 418; Union Ex. Co. v. Graham, 26 Ohio

St., 595; Swindler v. Hilliard, 2 Rich. S. C., 286; Baker v. Brinson, 9 Ib., 201; Cameron v. Rich, 4 Strobh., 168; S. Ex. Co. v. Newby, 36 Ga., 635; Steele v. Townsend, 37 Ala., 247; S. & N. A. Ry. Co. v. Henlem, 52 Ala., 606; Grey v. Mobile Trade Co., 55 Ala., 387; M. & O. R. R. Co. v. Jarboe, 41 Ala., 644; Ad. Ex. Co. v. Stettaners, 61 Ill., 184; Drew v. Red Line Transit Co., 3 Mo. App., 495.

In those states, where the contrary doctrine is held, the merest scintilla of evidence tending to show neglect is seized upon to throw the burden of proof upon the carrier. Specific acts of negligence can scarcely ever be shown by the owner of the goods; it must, therefore, be presumed from injuries which ordinarily result only from negligence. Bliss on Code Pl., sec. 211. A fire would not ordinarily destroy goods upon a train as this did without some negligence on the part of the carrier. The presumptions all being against the appellant, upon the question of negligence, and the proof of care, if it existed, lying wholly in his power, we think, in the absence of evidence on its part to show proper care and diligence, it must be held that the goods were not delivered, but consumed through the negligence of the appellant, and the judgment must accordingly be reversed and the cause remanded, and it is so ordered.

REVERSED AND REMANDED.

[Opinion delivered January 8, 1886.]