C. WALLACE, Superintendent Western & Atlantic Railroad, plaintiff in error, *vs.* JOHN W. CLAYTON, defendant in error.

(LOCHRANE, C. J., having been of counsel in this cause did not preside.)

1. An unusual and extraordinary flood in a river is such an act of God as excuses a common-carrier from his liability, at all events, for goods he has undertaken to transport; but even in such a case, the carrier is bound to exercise the care of a very prudent man to preserve the freight entrusted to him for carriage.
2. Diligence, and the want of it, are questions of fact, to be determined by the jury, under the evidence and the charge of the Court, and a new trial ought not to be granted by the Circuit Judge, unless the jury find strongly and decidedly against the weight of testimony.
3. In this case, the verdict is not strongly and decidedly against the weight of testimony, and as the case was fairly submitted to the jury, under the charge of Court, it was error in the Judge to grant a new trial.

Common-Carriers. *Actus Dei.* New Trial. Before Hon. JOHN COLLIER, Judge, *pro hac vice.* Fulton Superior Court. November Term, 1870.

Certain goods of Clayton were lost while in charge of the Western & Atlantic Railroad, as common-carrier. The defense was, that they were destroyed by a flood. That there was an unprecedented flood, and that the goods were destroyed by it, were shown. But plaintiff introduced evidence to show that, notwithstanding the flood, the goods could have been saved if defendant's agents had taken them on to a connecting road whose road-bed was higher than defendant's, and which, as prudent men, they should have done. Much evidence, *pro* and *con*, was introduced on this point. The evidence concluded, the Court charged the jury as follows:

"In order to entitle the plaintiff to a verdict in this case, the evidence must show that the defendant received the plaintiff's goods to be shipped over their road—the loss of the goods and their value at the place of delivery. If the testimony establish these facts, then the defendant is liable. In case of loss, the presumption of law is against the defendant, and no excuse will avail him, unless it was occasioned by the act of God or the public enemies of the State.

"The defendant is a common-carrier, and as such, is bound to extraordinary diligence. What is extraordinary diligence is defined by the Code, as follows: (Here the Court read the 2036th section of the Revised Code.) Does the evidence show in this case that the defendant took that extreme care of the plaintiff's goods, which every prudent and thoughtful person uses in securing and preserving their own goods? Could the goods of the plaintiffs have been saved by the exercise of extraordinary diligence on the part of the defendants? If they could and were lost, then the defendants are liable. If not, they are not liable.

" In determining the degree of diligence exercised by the defendants, you are authorized to take into consideration the facts testified to upon the subject of previous high water mark, the elevation of the road-bed or track, depot yard, the rapid rise of the water, as well as the efforts made by the defendants, and the time when such efforts were made to save plaintiff's goods.

" If, from all the facts and circumstances proven in the case, you shall believe that the defendants did take that extreme care and caution, which very prudent and thoughtful persons use in securing and preserving their own property, then the defendants would not be liable.  If not, then they are liable."

The jury found for the defendant.

Plaintiff's counsel moved for a new trial upon the following grounds:  1st.  Because the verdict was contrary to the evidence, and to the principles of justice and equity.  2d. Because the verdict was decidedly and strongly against the weight of evidence.  3d.  Because the Court erred in summing up the evidence to the jury, in the following language: " In determining the degree of diligence exercised by the defendant, you are authorized to take into consideration the facts testified to upon the subject of previous high-water marks, the elevation of the road-bed or track, and depot yard, and the rapid rise of the water, as well as the efforts made by defendant, and the time when such efforts were made to save plaintiffs' goods;" and in charging the jury a second time, at the request of defendant's counsel, after the charge had been concluded, that if plaintiffs' goods were destroyed by the act of God, defendant was not liable, and then, without request, repeating the language as above quoted, by way of summing up the evidence again, and thus diverting the attention of the jury from all that portion of the testimony which plaintiff relied on to show a want of extraordinary vigilance on the part of defendant.

Wallace *vs.* Clayton.

The motion for a new trial was, by order granted in term time, set down for argument at Chambers, and argument was accordingly had at Chambers, on the 5th day of September, 1870, before the Honorable John Collier, the presiding attorney selected by the parties, and the said presiding attorney passed an order granting a new trial.

The Court granted a new trial and that is assigned as error.

P. L. MYNATT, L. E. BLECKLEY, for plaintiff in error. What is act of God: 6th John R., 160; 23d Wend. R., 306; 14th, 215; 1 Sm. L. Cas., 272, *et seq.* When *actus Dei* shown, *onus* changed: 1 Sm. L. Cas., 273, 274, and authorities cited. Interference with verdicts: 37th Ga. R., 607; 36th, 418; 31st, 365; 30th, 212.

J. D. POPE, R. H. CLARK, for defendant. Grant of new trial: 26th Ga. R., 164; 6th, 185; 35th, 272; 36th, 604; 37th, 557; 3 Kelley, 310; 2d, 173; 9th Ga. R., 9–19; 16th, 27; 26th, 164; 30th, 968; 32d, 472; 34th, 375; Revised Code, sections 2036, 2040; 2 Bailey, 157; 1 Harp. L. R., 262, 468; 1 Conn., 491; 38th, 129; 39th, 118; 24th, 412; 26th, 528; 28th, 491, 589; 14th, 36; 17th, 498; 19th, 335; 30th, 133, 241, 476; 25th, 184. Charge of Court: 7th Ga. R., 428; 16th, 38, 48; 17th, 448; 18th, 697; 30th, 361, 133, 245, 380; 39th, 603. Important points in doubt: 36th, 321; 37th, 694. Negligence of agent contributing to loss caused by act of God: 2 Bailey, 157; 1 Harp. L. R., 468; 1 Sm. L. C., 271–2–3; 30th N. Y. R., 564, 630.

McCAY, J.

It cannot for a moment be denied that a flood, such as the evidence in this case discloses, is an act of God, in the sense of the books, which make such an act an exception to the influences against which a common-carrier insures. Indeed, the irresistible march of a mighty and unexpected flood is,

of all others, the most terrible exhibition of the powers of nature and the helplessness of man. It is only the Ruler of the universe who can say, with authority, to the rushing tide, "thus far shalt thou go and no farther." When such an event occurs, that rule which makes a common-carrier liable at all events, gives way: Angel on Carriers, 153, 160.

But it does not, therefore, follow, that the carrier may fold his hands, or that he is to be excused if he is negligent, or fails in exercising the diligence of a very prudent man. That duty is always upon him. Even amid the fury of the storm or the rush of the flood, he must use that prudence, discretion and energy which experience teaches very prudent men to use under such circumstances. If the loss be by reason of the want of extraordinary diligence in the carrier, then, though the agent of the loss be flood or storm, the carrier is liable: Angel on Carriers, 153, 160.

The real question in this case is, whether the railroad officials exercised, under the circumstances, the diligence of a very prudent man. This was a question of fact for the jury. From the nature of the case, this must always be so. The law can only lay down general rules, and on questions of diligence, it does this by referring to the conduct of men in the management of their affairs. Ordinary diligence, is the care which every prudent man takes of his own property of a similar nature. Extraordinary diligence, is that extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property: Revised Code, sections 2035 and 2036. What a prudent man will do, and what a very prudent and thoughtful man will do, under special circumstances, is, by the very definition, left to the judgment of the tribunal which has the facts of the case before it. Under our system, this is the jury—twelve men, observers of their fellow-men—with that education in the arts of care and diligence, and in the effects of flood and storm, which nothing but experience can give. The very definition of the Code makes human experience the standard, and what

this experience is, and how the evidence classes the acts of the parties, under the circumstances of the particular case, it is for the jury to say: Angel on Carriers, 7, 11, 22, 84.

Under our law, within certain limits, the finding of the jury is conclusive. Unless the verdict be strongly and decidedly against the weight of evidence, the Judge cannot disturb it: Revised Code, sections 2896, 3662. We do not think this verdict is strongly and decidedly against the weight of evidence. The proof is conclusive that this overflow was a very extraordinary one. Nothing like it had ever been known. The depot yard is twelve feet above the highest rise previously known of the Tennessee, and the flood was from eight to twelve feet deep over the yard. So, that the water rose from twenty to twenty-four feet, perpendicular, higher than ever before known.

We do not think the railroad company was wanting in the prudence of a very prudent and thoughtful man, in not raising its yard more than twelve feet above the highest flood ever before known in the river. Such a rule would make railroads almost impracticable, and would be contrary to public policy. It was not the fault of the company that the freight of the plaintiff was not sent off, in the ordinary course. Even that was prevented by the flood, and the cars were compelled to return to the yard.

It is, in fact, very plain, from all the evidence, that there was but one mode in which the freight could have been saved. It might have been run off upon the track of the East Tennessee & Georgia Railroad, on the 7th, 8th, or 9th of March, and saved, and the hinge of the whole case is just here. Were the agents of the company guilty of the want of that diligence which the law casts upon them, under the circumstances as disclosed by the evidence? We think not. There was not a moment, after the flood got beyond the highest ever known before, when they did not have a right to suppose that the limit of the overflow would soon be reached, and the higher it rose the more unnatural it became; the

Wallace *vs.* Clayton.

more contrary to human experience, the more baffling to the prudence of the prudent.    If we add to this that on the 8th they had a telegram from Knoxville that the river was falling, it is not at all strange they should feel quite sure they were safe at their own depot.    But, it is said, it was but a small matter to run the trains upon the East Tennessee & Georgia Railroad track, and that the Superintendent testifies, that if they had asked him, he would have granted leave.    He does not say he would have granted leave on any particular day, but, generally, that he would have granted the leave.    On the morning of the 9th, all was yet safe, and had the cars been moved on that day, they would have been saved.    Mr. Hook advised their removal, and during the day, Mr. Jackson went to the office of the Superintendent of the East Tennessee & Georgia Railroad to see if he could get the leave.    The Superintendent was gone up his own road, and Mr. Jackson learned *at the yard* that he could not use the track, because to do so would cut off the East Tennessee & Georgia Railroad trains from its own yard and depot.    It does not appear at what time the Agent of the East Tennessee & Georgia Railroad returned; but, in fact, the Agent of the Western & Atlantic Railroad undertook, after dark, on the night of the 9th, to move the cars to the dry place on the other road, *without* permission.    After moving the larger portion, a car got off the track, and owing to the depth of the water, could not be got back.    It resulted that some twenty-five cars were left at the yard, and the freight in them was ruined by the still rising water.    In these cars was the plaintiff's freight.

It is contended that it was a want of proper prudence not to have moved, even *without permission.*    We do not think so.    It is a serious matter to occupy a railroad track.    It is in evidence that the East Tennessee trains continued to run until the 10th.    It did not move its cars upon the dry ground till the 10th, and on the 9th the Superintendent was up the road with an engine.    It would have been very rash to occupy the track, the only track connecting the East Tennessee

& Georgia Railroad with its depot and yard, without permission; serious damage might have occurred, and Mr. Jackson could not know but that this very spot would be wanted by the other road for its own purposes. We must keep in mind, too, all the time, that, according to all reasonable expectations—all human experience—it was expected that each rising inch of the river would be the last. But it is said there was unusual and criminal neglect in the slowness and bad management of the agents in the actual move; that they did not do even this as prudent men. We are free to say we do not know. We do not feel ourselves competent to judge. We have observed that there is much intricacy in what is called *ginning cars,* and we can easily understand how, under the circumstances, with but one track on the East Tennessee & Georgia Railroad, there should be delay, and that it might be very difficult to get clear of the unfortunate flat car, which finally run off the track.

All this, as we have said, was for the consideration of the jury. It was all before them, the flood and its character, the habits of men and their conduct, under such circumstances; and the jury has decided that the railroad officials were not wanting in extraordinary diligence. We think their verdict is *not* strongly and decidedly against the weight of testimony. Indeed, we incline to think the weight of testimony is with the verdict. It is very easy, after the event, to see how all might have been saved; but the jury had a right to consider the matter as though they were present, without a knowledge of the final catastrophe, and to ask themselves what was prudence, under the circumstances, as they, in fact, existed, at each moment, as events transpired.

On the whole, we think a new trial ought not to have been granted. If such a verdict as this, under such evidence as this, can be set aside, the right of the jury to judge of facts is gone.