THE SOUTHWESTERN RAILROAD COMPANY, plaintiff in error, *vs.* EDWARD L. FELDER, defendant in error.

1. Where goods are shipped by railway, and arrive at their destination within the usual time required for transportation, and are there deposited by the company in a place of safety and held by them ready to be delivered on demand, their liability as common carriers ceases, (unless the custom of trade is shown to be otherwise as to delivery,) and that of warehousemen commences.
2. No notice to the consignee, where the goods arrive on time, is necessary to reduce the liability of the company from that of common carriers to that of warehousemen.
3. If the goods arrive out of time, and after they have been demanded by the consignee, it might require notice of their arrival to the consignee, and a reasonable time after, to relieve the company from the extraordinary liability imposed by law upon a common carrier.

Common carriers. Warehousemen. Notice. Custom. Before Judge COLE. Houston Superior Court. December Term, 1871.

Edward L. Felder brought assumpsit against the South-western Railroad Company for the sum of $200, besides interest. The declaration alleged that on the . .... day of November, 1870, at Macon, defendant received from plaintiff, for a valuable consideration, six bundles of iron cotton-ties and seven rolls of bagging of the value of $200, and undertook to transport and deliver the same to James E. Barrett, at Fort Valley, without unreasonable delay, which defendant has failed to do.

The defendant pleaded the general issue, and for further plea "that said goods were shipped on November 5th, and arrived at Fort Valley on that day, and that said goods were unloaded and placed in the depot ready to be delivered when called for; that said goods remained in the depot until November 12th, at night, when the depot, with these goods, was consumed by fire without fault on the part of this defendant.

The case was submitted to the jury upon the following statement of facts:

"It is agreed that the Southwestern Railroad Company is a regularly chartered corporation under the laws of this State; that they have a depot and an agent at Fort Valley, in the county of Houston, and that W. A. Skellie is the agent, and has been regularly served; that said Railroad Company received for shipment on the 4th day of November, 1870, at their depot, in the city of Macon, six bundles of iron cotton-ties and seven rolls of bagging, and that on the 5th day of November, 1870, they were carried over the company's road to Fort Valley, and unloaded and placed in the depot, at Fort Valley on that day; that said bagging and ties were consigned to J. E. Barrett, Fort Valley; that on the 12th day of November, 1870, plaintiff sent up money by John Gordon to pay the freight due said company; that Gordon did on that day pay the freight on these goods, but did not deliver the freight bills to E. L. Felder until the afternoon of the 12th, in Perry, a distance of twelve miles from Fort Valley.

"It is further agreed that the depot was consumed by fire on the night of the 12th of November, 1870, and that the goods sued for in this action were consumed in said depot; that actual notice of the arrival of said goods at the depot in Fort Valley was not given to plaintiff until the evening of the 12th, when the bills of freight were delivered by Mr. Gordon to plaintiff, in Perry.

"It is further agreed that said goods and the freight were of the value of $151 50.

"It is further agreed that W. A. Skellie, the agent at Fort Valley, went into the main body of the depot at about seven o'clock on the night of the burning without a light or fire of any kind; that there was no evidence of fire discovered by him in the depot; that he then went into the office of the agent in said depot and remained there until about nine o'clock, at which time he left, and that within one half hour after he left, the depot was discovered to be on fire; that the origin of the fire is unknown to defendant, and that the fire originated in the main body of the building, and not in the office of the agent, and is supposed to have originated from spontaneous combustion.

"It is further agreed that the depot was opened as usual on the day of the burning, and that E. L. Felder notified Mr. Barrett, the party to whom the goods were consigned, that he expected the goods some days before the burning, but that he (Barrett) had not been notified of the arrival of the goods at the depot."

The jury returned a verdict for the plaintiff for $151 50, besides interest and costs.

The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict of the jury is without evidence to support it, and is strongly and decidedly against the weight of the evidence.

2d. Because the verdict is contrary to law.

3d. Because the Court erred in charging the jury as follows, to-wit: "That defendant's strict liability as a com-

mon carrier continued a reasonable length of time after the goods had arrived at the place of destination to enable plaintiff to remove them, and that it was for the jury to determine whether seven or any other number of days were reasonable. If, in the opinion of the jury, the length of time that these goods remained in the depot after their arrival, was unreasonably long, and that plaintiff could and should have removed them at an earlier date, then defendant was not liable; but on the contrary, if the time they remained in the defendant's depot was not unreasonable, then defendant was liable and the jury should so find. That, in the opinion of the Court, it was not the duty of the railroad company to send notice to parties of the arrival of goods at their depot; this would be an unreasonable requirement, such as the law does not impose on carriers of this kind. Railroad companies as common carriers, however, are bound as such after goods have been unloaded from the cars for a reasonable length of time, and what is a reasonable length of time is a question for the jury alone to determine."

4th. Because the Court erred in refusing to charge the jury as requested, to-wit:

1st. "That if the jury were satisfied, from the evidence in this case, that plaintiffs shipped goods over the defendant's road and that said goods arrived safely at the place of destination and were then unloaded from defendant's cars and placed in the depot, and there remained for six or seven days, ready to be delivered when called for by plaintiff or his agent, and were after that time consumed by fire, then their strict liability as common carriers ceased."

2d. "That if defendant's liability as common carriers had terminated, then they were only liable to exercise ordinary diligence in taking care of the goods, and if the fire originated without carelessness on the part of defendant and consumed the depot and with it the goods sued for, then plaintiff was not entitled to recover."

In a note, the Judge states that this second request was given in charge as asked.

The motion for a new trial was overruled by the Court, and defendant excepted and now assigns said ruling as error.

W. S. WALLACE, for plaintiff in error.

No appearance for defendant.

MONTGOMERY, Judge.

Very little need be added in this case to the judgment of the Court as contained in the head notes. The decision as to the necessity of notice to the consignee may seem, at first glance, to conflict with *The Rome Railroad Company vs. Sullivan, Cabot & Company*, 14 *Georgia*, 277. The question of notice to the consignee was not in that case. It was a suit in trover, and the Court held that, although the railroad made a wrong delivery of the freight sued for, yet the company were not liable for a conversion until demand and refusal. Judge LUMPKIN'S remarks as to the necessity of notice are merely incidental. At all events, such is not now "the custom of trade," and we think section 2044 of the Code dispenses with the notice in this case and relieves the plaintiff in error of liability as a common carrier after transportation of the freight within the accustomed time, a deposit of it in a place of safety, and the holding of it there ready for delivery on demand. If a different custom prevails the consignee should show it. The liability of warehousemen continues till delivery, but there is no pretence that the plaintiff in error can be held responsible under the law applicable to bailees of that class. If the goods had arrived out of time, and after demand made by the consignee, the company might then be liable as common carriers until notice to the consignee and for a reasonable time after.

Ordinarily parties shipping goods by railways should inform themselves as to the time of arrival of the transporting train, and govern themselves accordingly. To require railways to give notice to every consignee of the arrival of his goods would impose an unnecessarily heavy burden upon them, with no corresponding benefit to the consignee, who

certainly should keep himself informed as to the transportation of his property when it can be so easily done.

Judgment reversed.