## HAWKINS vs. HAYNES.

1. A horse was hired from a livery-stable for a trip to a plantation, and was used by an employé of the hirer; it was turned into a lot with two plantation mules, and all ate what the plantation horses had left of corn and fodder. The distance traveled was twenty-six to twenty-eight miles; the day was warm; on the return trip, the horse became sick at a place some seven or eight miles from home; he was not stopped, but was driven with two persons in the buggy, until within about a half mile of his home. After the horse was left, the person driving him went on to let the owner know of it. The horse died the same day. The owner swore that the conduct of the employé in charge was wrong and cruel, after the discovery that the horse had scours. The employé and the person in the buggy with him swore that all was done for the best; that they thought best to get the horse home to the owner, who was a livery-stable-keeper and an expert in these diseases of horses:

*Held*, that there was sufficient evidence to support a verdict in favor of the owner against the hirer.

2. The refusal of a non-suit was right, the evidence being such as would warrant a verdict for the plaintiff.

3. In all cases of bailment, after proof of loss, the burden is on the bailee to show diligence. Loss, as used in this rule of law, does not mean merely a casual losing of the thing bailed, but is used in the sense of damage or injury.

October 2, 1883.

Negligence. Bailments. Damages. Hiring. Before Judge FORT. Sumter Superior Court. April Adjourned Term, 1883.

Haynes brought case against Hawkins. On the trial, the evidence showed, in brief, as follows: One McElroy, an agent of Hawkins, hired of Haynes a horse, for the purpose of driving to the plantation of Hawkins, which was thirteen or fourteen miles distant from Americus, the starting point. The horse was not harshly treated or driven too rapidly; at the plantation he was delivered to one Griffin, who turned him into the lot; the farm stock had just finished eating, and the horse, with two mules, ate the corn and fodder which remained in the troughs. On the return trip, the horse showed signs of sickness, and had a very offensive discharge from his bowels. McElroy

was informed that it indicated a slight attack of scours. He drove on, however, and took into the buggy with him one Kinney. At a branch, five miles from town, the horse showed decided signs of sickness. McElroy and Kinney consulted together and decided to drive him on to town, in order to get him to the owner, who was a livery-stable keeper. When in the outskirts of the town, the horse gave out, and, after being led a short distance, could go no farther. He was then left with one Cobb, and McElroy ran about half a mile to inform Haynes of his condition. When the latter arrived, the horse was dead.

The evidence was conflicting as to whether the conduct of McElroy was improper after discovering the condition of the horse. He and Kinney testified that the horse was not badly treated, but that McElroy did what they thought best, under the circumstances, and as he would have treated his own horse. Haynes testified that the conduct of McElroy was not only negligent but cruel, and that rest was necessary for a horse with scours. Another stableman testified that rest would have been best under the circumstances. There was also evidence as to people who lived along the road and at whose houses McElroy could have stopped; and as to the value of the horse.

The jury found for the plaintiff $185.62. Defendant moved for a new trial on the following grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court charged section 2064 of the Code as applicable to the case.

(3.) Because the court refused a non-suit.

The motion was overruled, and defendant excepted.

GUERRY & SONS; C. F. CRISP, for plaintiff in error.

HINTON & MATHEWS, for defendant.

JACKSON, Chief Justice.

Samuel H. Hawkins was sued by W. D. Haynes for the

value of a horse hired by the plaintiff to the defendant, and which died in consequence of the trip. The plaintiff recovered a verdict of $185.00, and the defendant, having been denied a new trial, excepted.

But three points are pressed on the motion here; first, that the verdict is unsupported by sufficient evidence and contrary to law; secondly, that the court erred in charging that "in all cases of bailment, after proof of loss, the burden is on the bailee to show diligence;" and thirdly, that the court should have granted a non-suit.

1. The horse was hired for a trip in the country to defendant's plantation, and was used by an employé of Hawkins. He seems to have been taken sick on his return, some seven or eight miles from town—Americus; was observed to be sick, particularly at the five mile branch; yet the employé of defendant did not stop, but pursued his journey to a short distance of town—some half mile—where he left the horse in charge of one Cobb, and ran to plaintiff's, a half mile off, to let him know. He took up a man on his return, and seems to have kept him in the buggy after the horse became sick, if he did not take him up in the buggy after the horse was sick. Plaintiff swore that the conduct of McElroy, the agent of defendant, was wrong and cruel, after he discovered the horse had the scours; that rest was necessary. People lived on the road, yet no help was asked and no stop made. Horse was turned into lot with two mules at the plantation, and all ate what the plantation horses had left of corn and fodder. McElroy, it seems, did not go to the lot, but Griffin, who seems to have been the overseer, had him turned in.

Kinney, the man whom McElroy took in the buggy with him, and McElroy himself, swore that all was done for the best. They thought it best to get the horse home to Haynes, the owner, who was a livery-stable man and expert in the diseases of horses.

Under the ruling in 31 Ga., 348, we cannot say that there is not sufficient evidence to uphold the verdict. Dil-

igence and negligence are always questions for them.   In that case, *Thompson vs. Harlow*, the distance traveled in the day was thirty miles; in this, twenty-six to twenty-eight. To stop and rest a sick horse was considered diligence, and not to do so, negligence, in that case.   Why not in this? In the case at bar, the day was quite hot, the horse sick with scours, and the plaintiff swore it was not only negligent but cruel not to stop.   He was driven until he stopped himself, and there he died.   A prudent man would hardly have treated his own horse in that way, and ordinary diligence, that is, that of a prudent man with his own, is that which is required by the law in this case.

2. Of course the court should not have granted a nonsuit, if the evidence supported a verdict.   We think it did, and very little came in after the motion to non-suit, and none which strengthened the plaintiff's case.

3. There was no error in the charge of the court.   It is the language of the Code, §2064.   This is a case of bailment, and it is the law "in all cases of bailments."   Loss does not mean, as argued, casual losing of things bailed; it means loss to the bailor, in the sense of injury to the thing bailed.   It is used by this court as synonymous with damage, an alternative for damage, in the construction of this very clause.   In 58 *Ga.*, on page 437, Warner, Chief Justice, said: "In all cases of bailment in this state, after proof of loss or damage, the burden of proof is on the bailee to show proper diligence.   Code, §2064."   So, in the same volume of reports, page 396, the same construction is applied where potatoes fell off in weight on delivery by the carrier at the place of destination.   See also 28 *Ga.*, 550; 38 *Ib.*, 32.

And such ought to be the law in the case of hiring horses.   The hirer—the bailor—entrusts the horse to the person who hires him.   He cannot tell what diligence was used; he only knows that his horse left him well in the morning, as is sworn in this case, and at nightfall he is dead, half a mile from home.   He who drove the horse,

and was with him all the time, ought to show what diligence he used, and the agent of the person for whom the horse is hired, stands in his shoes, and the bailee must show by him that he used the diligence required by law.

Judgment affirmed.