## 5651. SOUTHERN COTTON-OIL CO. *v.* LOUISVILLE & NASHVILLE RAILROAD CO. *et al.*

The rule which places upon a common carrier the burden of showing the exercise of extraordinary diligence in the transportation of goods (Civil Code, § 2712) applies not only in cases of total loss, but also in case of partial loss by injury or damage to the goods from delay in transportation or delivery, and requires that extraordinary diligence shall be shown as to the time of completing this service. •

DECIDED FEBRUARY 6, 1915.

Action for damages; from city court of Greensboro—Judge Sibley. April 2, 1914.

*Lewis, Davison & Lewis,* for plaintiff.

*Joseph B. & Bryan Cumming, Noel P. Park,* for defendants.

WADE, J. A car of cottonseed was delivered to the White Plains Railroad Company, at White Plains, Ga., on September 30, 1912, to be transported over that road and the road of the Georgia Railroad and Banking Company (both of which roads were operated by the defendants) to the Southern Cotton-Oil Company at Greensboro, Ga. The car reached Greensboro on the afternoon of October 1, 1912, and was there left at the station, as the train that customarily did the switching at Greensboro had already passed that point. Had there been no interruption, it would have been switched to the plaintiff's mill by "the next freight going west the next day—the next local freight going west, . . in accordance with the regular course of business between the railroad and the mill." This car arriving at Greensboro on October 1, after the switching-train had passed that point, in the regular course of business it was obliged to wait until the next day to be switched to the mill of the Southern Cotton-Oil Company. At 6 p. m. on October 1, a strike of all flagmen and conductors of the defendants went into effect, and it remained in effect continuously for about 15 days thereafter. These employees ceased to work, and "the strike was accompanied by much violence and intimidation, and all efforts of the defendants (said efforts having been fully attempted) to forward the freight failed; the violence and armed resistance was of such a character as could not be overcome by the carrier and was not controlled by the civil authorities of the State when they were called upon by the defendants." The car of cottonseed remained at the station and was not delivered to the plaintiff on its side-track until October 15, 1912; and on account of this

long and unreasonable delay, the cottonseed greatly deteriorated, as the seed had "heated," rotted, and turned black, and was so greatly damaged as to be entirely useless for the purpose for which it was purchased; the car of rotten seed was then sold for the best price obtainable for manure, and this suit was brought to recover damages for the resulting loss. The trial of the case resulted in a verdict for the defendant, and the plaintiff excepts to the refusal of its motion for a new trial.

The plaintiff in its petition complained of unreasonable and negligent delay, and of failure of the defendants to give notice of the arrival of the car at Greensboro, and on these grounds sought damages. The evidence was in conflict as to whether notice of the arrival of the car was given by the agent of the defendants to the plaintiff's cashier. It appears that the train which brought the car to Greensboro placed it on a side-track at the station, in a position where it was practically inaccessible to wagons. It further appears that the regular course of giving notice of the arrival of freight at Greensboro embraced three different methods, according to the circumstances of each case: Less than car-load lots, consignees other than merchants were notified by postal-cards through the mails, and consignees who were merchants were notified personally by the agent; consignees of car-load lots who had side-tracks of their own were notified by placing their cars on such side-tracks. It appears from the evidence that it was impossible to notify the plaintiff of the arrival of the car of cottonseed by placing the car, through the ordinary and usual means, on its side-track, and, according to the testimony for the defendants, personal notice of the arrival of the car was given to the plaintiff within a day or two from the time the strike was declared. The question whether notice was given personally to the plaintiff was a question entirely for the jury, and need not be considered here. The only question to be determined is whether the trial judge erred in charging the jury as to the degree of care and diligence the defendants were required to exercise.

The 4th ground of the motion for a new trial complains that the court erred in charging the jury as follows: "I charge you that one who pursues the business constantly or continuously for any period of time or for any distance of transportation is a common carrier, and, while a common carrier is bound ordinarily to use

extraordinary diligence, this rule applies in the case of total loss or destruction of the property, and does not apply in the case of partial injury to the property, or of deterioration in value due to delay in transportation. The burden is on the plaintiff, in the first instance, to satisfy you that a loss has been occasioned through the operation and running of defendants' business as a common carrier, and, when such loss is shown, the burden rests upon the common carrier (the defendants in this case) to show that they have used reasonable care and diligence, or ordinary diligence. Ordinary diligence is that care which every prudent man takes of his property of a similar character. The absence of such diligence is termed ordinary neglect." The plaintiff insists that this charge was error because the degree of diligence which the law requires of a common carrier, in cases of partial injury or damage to property, as well as in cases of total destruction and loss of property, is extraordinary diligence, and the question for solution by the jury was whether the defendants had exercised this degree of diligence to prevent damage to the goods. In the 5th ground of the motion it is complained that the court erred in refusing to give in charge to the jury, without qualification, sections 2712, 3472, and 2713 of the Civil Code of 1910. The 4th and 5th grounds may be considered together, since they practically involve but one question.

The defense urged by the defendants to relieve them from damages on account of the long delay in delivering the car-load of cottonseed, which arrived at Greensboro on October 1, 1912, and was not finally switched to the track of the plaintiff until October 15, 1912, is the defense provided for under the Civil Code, § 2737. That section is as follows: "Where a carrier receives freight for shipment, it is bound to forward within a reasonable time, although its employees strike or cease to work; but if the strike is accompanied with violence and intimidation so as to render it unsafe to forward the freight, the carrier is relieved as to liability for delay in delivering the freight, if the violence and armed resistance is of such character as could not be overcome by the carrier or controlled by the civil authorities when called upon by it." It appears, from the general trend of the later decisions of courts of last resort, that a strike accompanied with violence and intimidation may be treated as an act of God, so far as it may cause delay on the part of a carrier in transporting goods (4 Ruling Case Law, §§ 212, 196,

48

and cases there cited); and while, under the weight of authorities elsewhere, proof that the loss happened from the immediate agency of the act of God would create a presumption that the carrier was duly diligent, and shift the burden of proof to the opposite party, the Code of Georgia declares that in case of loss the presumption of law is against the carrier; and this declaration occurs in the section in which the degree of diligence to which the carrier is bound is declared to be "extraordinary diligence" (§ 2712); and the burden is upon him to show "not only that the act of God . . ultimately occasioned the loss, but that his own negligence did not contribute thereto" (§ 2713). "To silence the presumption altogether, it is necessary to . . show that the act of God was the sole cause, and that the loss happened in spite of the use of due diligence by the carrier to prevent it. This, at least, must be the general rule, and the one applicable to every case in which the circumstances attending the calamity are such as to suggest the probability that the loss might have been avoided had extraordinary diligence been exercised." *Richmond &c. Railroad Co.* v. *White,* 88 *Ga.* 805, 811 (15 S. E. 802).

It appears, from the order of the trial judge overruling the motion for a new trial, that his instruction to the jury that the carrier is bound only to ordinary diligence, where damages for delay in making delivery of goods are sought, was based upon the rule laid down in the case of *Johnson* v. *East Tenn. &c. Railway Co.,* 90 *Ga.* 810 (7), 811 (17 S. E. 121), as follows: "Where a common carrier receives goods for transportation and is sued for delay in delivering them, it is error to charge that the carrier is bound to extraordinary diligence as to the time of transportation. Ordinary and reasonable diligence is the rule." In cases of loss, the presumption of law is against the carrier, and the measure of diligence he must exercise to enable him to escape liability, even where loss was occasioned by the act of God, is "extraordinary diligence." Civil Code, § 2712. See also *Richmond &c. Railroad Co.* v. *White,* supra, and *Atlanta & West Point R. Co.* v. *Jacobs,* 135 *Ga.* 113 (68 S. E. 1039). The code further provides that, "in order for a carrier or other bailee to avail himself of the act of God or exception under the contract as an excuse, he must establish not only that the act of God or excepted fact ultimately occasioned the loss, but that his own negligence did not contribute thereto." Civil

Code, § 2713. No rational reason can exist why the measure of diligence exacted where goods in transit are totally lost should be "extraordinary," and the measure where goods in transit are injured or damaged, or in other words partially lost, should be "ordinary" only. It is easy to understand the application of the rule of ordinary diligence to a case of damage on account of delay in delivery, where the property has not in any way been injured, damaged, or partially destroyed, but the delay has occasioned loss on account of a drop in the market price of goods of the kind shipped, or for similar reasons; but, as stated above, no reason can be suggested why a carrier, bound to exercise extraordinary care to relieve him from a recovery on account of the total loss or destruction of the property in transit, should not be required to exercise the same degree of diligence to escape the consequences of a partial destruction of the property, resulting from unreasonable delay in delivery at destination. In this connection another quotation from *Richmond &c. Railroad Co.* v. *White,* supra, is exactly in point: "The code applies the presumption of default after proof of loss, not only to common carriers, but to all bailees, section 2064 declaring that 'In all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence.' The word 'loss' in this section has been construed to mean injury or damage to the goods as well as their destruction or disappearance. *Hawkins* v. *Haynes,* 71 *Ga.* 40. There can be no question that the word has a like meaning in section 2066, as applied to common carriers." The 7th headnote in the case of *Johnson* v. *East Tenn. &c. Railway Co.,* quoted supra, *appears* to state a fixed and certain general rule as to the degree of diligence required by the carrier where suit is brought for damages on account of delay in delivery of goods received for transportation; and it is there clearly announced that "ordinary and reasonable diligence is the rule." It is also true that from the statement of facts in that case, as it appears in the printed volume, it would seem that the suit was brought on account of delay by the carrier to deliver certain goods within a reasonable time, "and that by this unreasonable delay the goods were *damaged,*" etc. (italics ours). The ruling stated in the 7th headnote of that decision is not discussed in the opinion. We have, however, taken the pains to inspect the original record in that case, in order that we might ascertain the exact facts upon which this ruling was based. As we

have already indicated, if it were construed to cover cases where damages were sought on account of injury to or partial loss of property, caused by delay in transit, this ruling would be directly in opposition to code sections 2712 and 2713, and also in conflict with the older decision (*Richmond &c. Railroad Co.* v. *White*) to which we have already referred, as well as in apparent conflict, in principle, with several later decisions of the Supreme Court; but an examination of the original record in the *Johnson* case discloses that the damages sued for in that case were not for *injury to the property* shipped, or on account of partial loss thereof; the petition set forth that certain fertilizers were purchased by the plaintiffs, and were shipped from Charleston, S. C., consigned to the plaintiffs at a point on the defendant's railway in Georgia, the plaintiffs paying in advance the freight on these goods for the entire carriage; and that, having received the bill of lading for the goods, and being assured of quick passage thereof, the plaintiffs sold the goods in advance of arrival, disposing of them regularly in their business, at a certain profit per ton; that one car of guano was delayed en route, and that the plaintiffs lost the sale of that car of guano, as their entire trade had been supplied elsewhere; to the damage of the plaintiffs in an amount stated. It is obvious that under these facts the measure of diligence to which the carrier should have been held was ordinary diligence, since there was no "loss," either total or partial, *of the property shipped;* and therefore code sections 2712 and 2713 did not apply. The rule laid down in the 7th headnote is correct under the facts of that case, but the allegation in the statement of facts that the suit was on account of unreasonable delay whereby "the goods were damaged" is misleading, since it does not appear from the record that the goods were damaged in the slightest degree; it appears only that the plaintiffs were damaged on account of the non-arrival of the goods until after unreasonable delay. "When goods are damaged in the hands of the carrier, the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage; and no exception to the rule arises from the fact that the goods are perishable or liable to deteriorate rapidly from internal causes. In all cases the presumption of law is against the carrier." *Central Railroad Co.* v. *Hasselkus,* 91 *Ga.* 382, 385 (17 S. E. 838, 44 Am. St. R. 37).

In view of what we have said above, it is clear that, in accordance with the statutory provisions in this State, upon proof of loss arising on account of damage to the cottonseed, or, in other words, on proof of partial *loss* of the property, the burden was upon the defendants to show that they used extraordinary diligence to prevent the loss, and, if the act of God ultimately occasioned the loss, that the negligence of the defendants did not contribute thereto. The defendants might have had a complete defense under the Civil Code, § 2737, upon proof that they used only ordinary diligence to prevent the loss, if the damage for which recovery was sought had not been on account of injury to the subject-matter of the shipment, but had resulted solely from the delay without injury to the property transported.

We can readily understand how the learned trial judge, not having access, as we have, to the original record in the *Johnson* case, supra, would feel constrained to charge the rule, there apparently laid down (when taken in connection with the printed statement of facts), that ordinary diligence only was required where suit was brought to recover damages arising on account of delay by a common carrier in transporting goods, irrespective of whether or not damages arose because the delay caused the destruction of the goods in whole or in part, or because it occasioned loss to the consignee on account of a decline in the price of the commodity shipped, or for like reasons.

*Judgment reversed. Broyles, J., not presiding.*